UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DA ZENG,<br><br>Defendant | No.22-cr-10185-IT |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On March 26, 2025, defendant Da Zeng pled guilty pursuant to a plea agreement to Counts One and Two (money laundering conspiracy in violation of 18 U.S.C. § 1956(h)), and Count Three (operating an unlicensed money transmitting business, aiding and abetting, in violation of 18 U.S.C. §§ 1960 and 2). Pursuant to the plea agreement, the government is asking the Court to impose a sentence of 24 months of imprisonment followed by 2 years of supervised release. This recommendation is at the low end of the guidelines as calculated by the parties in the plea agreement and is sufficient but not greater than necessary considering, among other things, the applicable Guidelines sentencing range, the nature of the offenses and the defendant's role in the offenses, and the needs to promote respect for the law, provide adequate deterrence, and impose just punishment.

**A. Nature of the Offense and Da Zeng's Role**

The parties have an agreed-upon statement of facts in this matter, which is attached to defendant's plea agreement and incorporated into the PSR. As detailed in that statement of facts, the defendant Da Zeng worked with lead defendants Shi Rong Zhang and Qiu Mei Zeng on two of their prolific money schemes.

1

First, he facilitated the defendants' unlicensed money transmitting business by coordinating the delivery of hundreds of thousands of dollars in bulk cash. In this role, he served as a middle man, connecting Shi Rong Zhang and Qiu Mei Zeng with third-party holders of bulk cash in New York. As detailed in the PSR (paragraphs 10-15), during the course of the wire interceptions, the defendant middled two large cash transactions—one for approximately $100,000, and another for approximately $140,000—in December 2021 and February 2022. Co-defendants Wei Qing Zeng and Xian Rong Zhang then drove to New York and brought the cash back to Shi Rong Zhang and Qiu Mei Zeng at their Boston restaurant, where the leaders would transfer the equivalent value in Chinese RMB to accounts in China.

Although the wiretaps indicate that Shi Rong Zhang and Qiu Mei Zeng had at least one other connection to bulk cash in New York, it is clear that the defendant played an integral role in connecting the leaders to an important source of bulk cash to facilitate their unlicensed money transmitting business. In this scheme, Da Zeng's role appears to have been below that of Shi Rong Zhang and Qiu Mei Zeng (as he fulfilled their requests for bulk cash), but significantly above that of the co-defendants who merely delivered the cash. Da Zeng was intimately involved in the details of the exchange: coordinating the dollar amount, timing, and logistics. In an intercepted call with Qiu Mei Zeng on December 8 leading up to the $100,000 transaction, Da Zeng also described his close relationship with the source of the cash:

| Q.M. ZENG: | Yes, that's right. Is the person from whom you usually go and pick up stuff in New York a relative of yours? |
|---|---|
| DA ZENG: | More or less. Yeah. |

Perhaps because of this close familial-type relationship with the source of the cash, Da Zeng admitted he understood that the cash retrieved from New York represented drug proceeds as well as proceeds from COVID-relief fraud. PSR ¶ 15.

Second, with respect to the cell phone money laundering scheme helmed by Shi Rong Zhang, Da Zeng's role was more limited—he served as a "shopper," taking stolen credit cards/gift cards provided by Shi Rong Zhang and purchasing Apple gift cards and/or Apple products, which were then delivered back to Shi Rong Zhang.

That said, the defendant served as a "shopper" on numerous occasions, and had extensive conversations with Shi Rong Zhang about his activities. PSR. ¶¶17-22. For example, on February 10, 2022 they discussed Shi Rong Zhang wiring Da Zeng money so he could purchase iPhones and suspected Apple gift cards (PSR ¶ 17), and on February 23, 2022, Da Zeng told Shi Rong Zhang that he had purchased six devices that day and still had $80,000-$90,000 in gift cards (PSR ¶ 18). On February 24 and 28, 2022, investigators surveilled Da Zeng as he "shopped" at the South Shore mall Apple Store, where he purchased six iPhones and $8,000 in Apple gift cards, respectively. Notably, investigators spoke to an Apple employee who served Da Zeng during his February 28, 2022 shopping trip, who reported that Da Zeng's payment methods were consistently being declined, suggesting that the payment cards he was using were frozen or flagged for fraud. PSR ¶ 20.

On March 2, 2022, investigators stopped Da Zeng when he was at the South Shore mall. He was found in possession of approximately $60,000 worth of Apple gift cards, several newly-purchased cell phones, receipts for other Apple products he had purchased, and 6 active cell phones with Apple wallets full of American Express gift cards. PSR ¶ 19. And on April 27, 2022, investigators stopped Da Zeng again in an Apple store in the Cambridgeside Galleria mall, again

purchasing Apple products using multiple cell phones with Apple wallets full of American Express gift cards. PSR ¶ 22.

There is no evidence that Da Zeng was involved in stealing the cards from the victims, but there is evidence that he understood the gift cards he was using represented illegal proceeds. First, when he was questioned on March 2, 2022, the defendant showed investigators his digital Apple wallets on his five different iPhones which each contained around 20 prepaid American Express gift cards valued at $500 each. Compl. Aff., Dkt. 1-1 at ¶ 132. Da Zeng explained that he used the American Express gift cards to buy Apple gift cards, and then used the Apple gift cards to buy Apple products. *Id*. When he was asked why he was going through the extra step of using multiple American Express gift cards to buy Apple cards, Da Zeng refused to answer and changed the subject. *Id*. When he was stopped a second time, on April 27, 2022, the defendant admitted that he purchased the American Express gift card numbers through a WeChat group chat, and that he paid for the American Express gift cards at a discount in RMB. *Id*. at 134. When he was asked if the American Express gift cards were stolen, Da Zeng responded, "Maybe," and explained that he knew a lot of the "gift card people" steal the gift cards, but could not say for certain whether the cards he possessed in his Apple wallets were stolen. *Id*. at 134.

### B. Sentencing Guidelines

The parties and U.S. Probation (USPO) have calculated the guidelines differently in two respects: first, USPO created two groups (Group One, money laundering and Group Two, unlicensed money transmitting business); and second, USPO applied two enhancements (sophisticated money laundering, under USSG §2S1.1(b)(3) and aggravating role, under USSG

§3B1.1) that the parties have agreed do not apply.[1] If the Court did not apply these two enhancements, the total offense level would be 17 regardless of whether the Court applied USPO's two-group analysis, or the parties' single group.[2] Although the government does not believe USPO was necessarily incorrect in creating two groups, the parties have agreed to what they believe to be the proper calculation of the guidelines as set forth in paragraph 3 of the plea agreement:

The total dollar amount involved in Da Zeng's related offenses is approximately $400,000, PSR ¶ 26, resulting in a base offense level of 20. USSG §§ 2S1.1(a)(2) and 2B1.1(b)(1)(G). Defendant's offense level is increased by two levels because he has been convicted under 18 U.S.C. § 1956. USSG § 2S1.1(b)(2)(B)). Defendant's offense level should then be reduced by three levels for his prompt acceptance of responsibility, USSG § 3E1.1, and another two levels because he is a zero-point offender, USSG § 4C1.1.

This results in a total offense level of 17, and with a criminal history category of I, the defendant's advisory guideline sentencing range should be 24-30 months. The government's recommended sentence of 24 months is at the low-end of the Guidelines sentencing range, which the government submits is appropriate for the reasons set forth in this memorandum and to be articulated at the sentencing hearing.

## C. The Need to Avoid Unwarranted Sentencing Disparities

Each of the three defendants sentenced thus far has been involved in just one of the charged money schemes in this case: Chengzou Liu was convicted for laundering his drug proceeds through China Gourmet (Count One); and defendants Wei Qing Zeng and Xian Rong Zeng were involved

---

[1] As detailed above, the government does not believe Da Zeng held a leadership role in either scheme. Additionally, the government does not believe the Da Zeng's involvement in the cell phone scheme involved the use of sophisticated means.

[2] Under USPO's two-group analysis and without the two contested enhancements, the adjusted offense level for group 1 would be 20, and for group 2 would be 18; the multiple count adjustment would result in two units; the combined offense level would be 22; minus 3 for acceptance of responsibility and minus 2 for zero point offender, would result in a total offense level of 17—the same as the parties have calculated utilizing one group in the plea agreement.

in the unlicensed money transmitting business (Count Three). This defendant, Da Zeng, was actively involved in both the money laundering and unlicensed money transmitting businesses. The only other defendants charged in both money laundering and unlicensed money transmitting are the three remaining defendants who are set for trial. As a result, there is no sentenced defendant who is similarly culpable. The government believes Da Zeng's involvement in multiple schemes makes him more culpable than any sentenced defendant. The Court should, therefore, not vary below the low end of the guidelines and should impose a sentence of 24 months.

| Defendant | Offense(s) | Status | Basis for GSR Calculation | GSR | Government Recommended Sentence | Sentence Imposed |
|---|---|---|---|---|---|---|
| Shi Rong Zhang | Money laundering; Unlicensed money transmitting | Trial set for 12/1 | | | | |
| Qiu Mei Zeng | | | | | | |
| Chengzou Liu | Money Laundering, PWID Marijuana | Sentenced | 157 kilos marijuana | 37-46 months | 30 months | 24 months |
| Vincent Feng | Money laundering; Unlicensed money transmitting | Trial set for 12/1 | | | | |
| Da Zeng | | This Defendant | $400,000 | 24-30 months | 24 months | |
| Wei Qing Zeng | Unlicensed money transmitting | Sentenced | $350,000 Minor role Knew funds were unlawful | 12-18 months | 12 months | 3 months prison+3 months home detention |
| Xian Rong Zeng | | Sentenced | $140,000 Minor role | 0-6 months | 2 months | Time served |
| Qiu Fang Zeng | | Sentencing 7/25 | $600,000 Minor role | 12-18 months (anticipated) | 12-18 months (anticipated)[3] | |

---

[3] The government is awaiting the pre-sentence report for this defendant before deciding on a precise sentence, but the government agreed in the plea agreement to recommend a sentence within the guidelines as calculated by the Court.

6

**D.  The needs to promote respect for the law, provide adequate deterrence, and punish**

The defendants' unlicensed money transmitting and money laundering businesses were prolific and involved the movement of millions of dollars over the course of just the few months that agents happened to be intercepting the defendants' telephones.  Through the cell-phone laundering scheme, Da Zeng helped Shi Rong Zhang use stolen gift cards to buy Apple products which were shipped overseas.  The goal of this scheme was to convert the stolen funds into legitimate-seeming products and thereby obscure the illegal source of the funds.  But behind those stolen gift cards were real victims.  PSR ¶ 23.  Even though Da Zeng was not personally involved in stealing the funds, he knew that he was using stolen gift cards to buy the Apple products.  Da Zeng also understood that the hundreds of thousands of dollars he helped move from New York to Boston likely represented proceeds from drug trafficking and COVID fraud.  This blatant disregard for the law cannot be condoned.

The sentence for this defendant also needs to provide specific and general deterrence.  Da Zeng and his coconspirators (including Shi Rong Zhang) were not discouraged by encounters with federal law enforcement during the course of this investigation.  For example, when on March 2, 2022, investigators stopped Da Zeng at the South Shore mall, he initially lied—telling investigators he bought the Apple products with his own money and that he had made up the name "Shi Rong Zhang" when shown a receipt with his name on it.  Investigators released Da Zeng without charges, but seized the $60,000 in Apple gift cards.  News of Da Zeng's encounter with law enforcement made its way to Shi Rong Zhang, who was intercepted as he directed other members of the conspiracy to "abort purchases *for the rest of the day*."  PSR ¶ 24 (emphasis added).  Later, Shi Rong Zhang discussed that they should "destroy" evidence from the scheme, including the stolen

gift cards and the receipts because he fully understood that if the shoppers were arrested, they could be charged related to the stolen gift cards. PSR ¶ 25. Nevertheless, they persisted.

On April 27, 2022, investigators stopped Da Zeng again in an Apple store in the Cambridgeside Galleria mall, again purchasing Apple products using multiple cell phones with Apple wallets full of American Express gift cards. PSR ¶ 22. Da Zeng admitted this time that he purchased the American Express gift cards through group chats on WeChat—a fact corroborated by the later search of Da Zeng's personal cell phone. PSR ¶ 23. He also admitted that he sells the Apple products he purchased to Shi Rong Zhang. PSR ¶ 22.

The facts related to the bulk cash money transmitting scheme further establish that the defendant and his coconspirators were undeterred from criminal behavior even when they understood the serious risk of being caught by law enforcement. As detailed in paragraph 13 of the PSR, with respect to the December 2021 bulk cash transaction, Qiu Mei Zeng discussed with Da Zeng whether they could conduct the cash delivery during the day because she believed there would be more police on the roads at night and she did not want her brother to be stopped with the cash. PSR ¶ 13. Da Zeng not only facilitated that transaction for roughly $100,000, but went on to coordinate another delivery of around $140,000 just two months later, in February 2022. PSR ¶ 14.

Additionally on March 8, 2022 (just 6 days after he was stopped by investigators and the $60,000 in gift cards was seized), Da Zeng and Shi Rong Zhang were intercepted as they discussed their ongoing currency exchange business:

8



The defendant and his coconspirators were persistent in their criminal endeavors, even in the face of federal law enforcement. The Court is now in the position to send an important deterrent message—that engaging in these kinds of schemes has very real, very serious, consequences. Imposing a sentence of 24 months of incarceration here will send the message that it is unacceptable to profit from the victimization of others or to operate a black market money transmitting business that turns a blind eye to the illegal proceeds fueling the business. Such a sentence will also promote respect for the law and provide just punishment for the defendant's criminal endeavors.

E.  **Government's Recommended Sentence**

The guideline range of 24-30 months as calculated by the parties already accounts for the defendant's lack of criminal history because he has benefited from the zero-point offender reduction. If he had even one criminal history point or otherwise did qualify under § 4C1.1, his guidelines would be 30-37 months.

For similarly-situated defendants with a primary guideline under § 2S1.1 (money laundering) who had a criminal history category I and a total offense level 17, the JSIN data indicates that approximately 81% of defendants received an incarcerative sentence, with an average sentence of 17 months. For defendants with the same offense level and criminal history, but whose primary guideline was 2S1.3 (unlicensed money transmitting), 81% of defendants received an incarcerative sentence, with an average sentence of 18 months. This data supports the government's position that a fair, just, and appropriate sentence under the circumstances involves an incarcerative sentence, and not merely probation as the defendant requests. Given that the defendant was knowingly involved in two distinct criminal schemes, and in light of his continued criminal conduct even after he was stopped by investigators mid-scheme, a sentence slightly above the average is appropriate to account for his enhanced culpability.

The government's 24 month recommendation for defendant Da Zeng appropriately balances all of the factors set forth in 18 U.S.C. § 3553, and is sufficient but no greater than necessary to achieve the goals of sentencing.

## CONCLUSION

For the foregoing reasons and those to be articulated at sentencing, the government asks the Court to impose the requested sentence.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*/s/ Lauren A. Graber*
Lauren A. Graber
Charles Dell'Anno
Assistant U.S. Attorney

Date:   July 11, 2025

## **CERTIFICATE OF SERVICE**

      Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                        */s/ Lauren A. Graber*
                                                        Lauren A. Graber
                                                        Assistant U.S. Attorney

Dated: July 11, 2025